(Hamilton County, Ohio, Common Pleas Court, March 1897.)

### J. W. OWEN & CO., v. LOUISA MURRY, et al.

An agreemenst between the owner and the head contractor that no suit sha'll be brought until all lien notices shall have been paid, does not prevent sub-contractors from maintaining suit for money still due under the contract.

The dismissal of a suit by the head contractor against the owner, on the ground that there is nothing due him, is not a determination against claims of sub-contractors upon the fund still in the owner's hands.

---

S. W. SMITH, JR. J.

In this case it appears that on the 3rd day of August, 1893, Louisa Murry entered into a contract with the plaintiff for the erection of a certain house on Price Hill for an amount specified in said contract; but afterwards said plaintiff took out a mechanic's lien for the balance claimed to be due, and brought suit to foreclose said lien, making the owner of the property and others defendants; and afterwards certain sub-contractors under said plaintiff, who had taken out sub-contractors' liens upon the said premises, were made parties defendant to the said suit, and filed their answers and cross-petitions praying for foreclosure of their liens.

Said suit came on for trial, and upon the evidence of plaintiff and the contract between the said plaintiff and the owner, this court dismissed said plaintiff's petition. The sub-contractors who had taken cut mechanics' liens, now ask that the suit proceed on their answers and cross-petitions, the right of which is denied by the owner, for the reason of the dismissal of plaintiff's petition, in that there is nothing due the plaintiff from the owner.

Contention is made on behalf of the owner.

1. That the sub-contractors are bound by the contract of their head contractor with the owner; and,

2. That the answers and cross-petitions of the sub-contractors do not allege facts sufficient for a cause of action, and are demurrable on the ground that they do not aver when any subsequent payments fell due, nor do they contain the allegation that when the liens were obtained, ten days had elapsed thereafter.

It is necessary, therefore, in determining this question, to see exactly what the contract between the plaintiff and the owner contained. It is true, and it is so decided in our state as well as in others, that the sub-contractor is bound by the contract of his head contractor; and the portion of the contract relied upon is that clause which reads as follows:

"That no suit shall be brought for nor interest accrue upon any part of the price until all such lien notices shall first have been paid by the contractor, and vouchers therefor given to the employer."

There is, however, in this contract, a further provision, as follows:

"That payment to any person who may have served on the owner a sub-contractor's, laborer's or material man's lien notice, shall at all times be considered as payment to the contractor."

These two clauses, upon first reading, seem to be in opposition to each other, and therefore they must be given, if possible, a meaning wich will make them harmonize. It is evident that the portion relating to the payment to any person who may have taken out a lien, as that it "shall at all times be considered as payment to the contractor," contemplates that one or more sub-contractors may, during the progress of the work, take out such a lien. And the clause saying that "no suit shall be brought" etc., it would seem, must mean that no suit shall be brought by the head contractor for any balance that might be in the hands of the owner, due him after the payment of such liens as may have been taken out. Therefore, the language "no suit shall be brought" can not, it seems to me, mean that the sub-contractors, who by the contract are recognized as parties who may take out liens, can not maintain an action for any money that may be in the owner's hands after lien notice served upon the owner.

Again, there is nothing in this contract which provides that the contractor shall not file a lien. And in this respect it is like the case of Murphy v. Morton in 139 Pa. State. 345. In this case the case of Shroder v. Galland, 134 Pa. State, is distinguished, and the court says:

"The point decided in that case was that a sub-contractor stands in the shoes of his contractor, and cannot file a lien when he could not. In this case there was no agreement by the contractor not to file a lien."

This question, however, is discussed by Boisot on Mechanic's Liens in secs. 747 and 748. Section 747 as follows:

"Admitting that a contractor may by provision in the building contract cut himself off from the benefits of the mechanics' lien law, his right to keep sub-contractors and material men in the second degree from claiming liens is not so clear. Yet a majority of the decisions hold that a clearly expressed covenant in a building contract against the assertion of liens by anyone, precludes bcth sub-contractors and material men in the second degree, as well as the original contractor himself, from asserting mechanics' liens for work done or materials furnished pursuant to such ccntract."

In this contract in this case there is no clearly expressed covenant against the assertion of liens by anyone, but, on the contrary, the assertion of liens by the sub-contractor is contemplated; as it is provided that a payment to any such by the owner shall be considered as a payment to the contractor.

Section 748 of the same work is as follows:

"The rule requiring agreements to waive mechanics' liens to be clearly expressed applies with even additional force when the agreement is invoked to cut off the rights of sub-contractors or material men in the second degree. * * * So, too, stipulations in a building contract between the builder and the owner of the premises that the last payment of the contract price need not be paid until a complete release of liens shall have been furnished the owner, and that there shall not be any legal or lawful claims against the party of the first part (builder) for work or materials furnished, do not preclude a sub-contractor from enforcing a mechanic's lien against the building."

Other cases are cited in this section, and it would, therefore, seem

that, in the absence of any express agreement on the part of the head contractor not to take out a lien, and also w t i the clause in the contract contemplating the filing of liens by sub-contractors, and thereby giving credit to the owner for any payments made to such lien-holders, the sub-contractors would have a right to maintain their action on their claims and subject any moneys in the hands of the owner that may remain on said contract price, the clause relating to the bringing of no such suit being intended simply to prevent the head contractor himself from maintaining an action against the owner for any balance that may be due, if any, until the payment of such liens. Of course, a direct agreement by a sub-contractor or a material man that he will look to the contractor for pay, and will not file a lien, would prevent him from asserting such a lien. But there is no such statement of facts as that in this case.

2. It is urged again, that the sub-contractors can not maintain a suit, for the reason that there is "nothing due" from the owner to the head contractor, by reason of the dismissal of the petition. But I take it that there is a distinction between what is due to the head contractor and what claims may exist upon the funds in the hands of the owner. And this would seem to be the right construction to put upon this language. As in the case of Watkins, Pease & Co. v. Shaw, 7 Ohio Circuit Court Reports, 418, the court uses this language:

"The owner knows what is due from him to the head contractor, and also what other claims upon the same fund have been filed with him, and should set up these facts in his answer, and thus his liability will be shown."

In other words, there would seem to be a distinction between what is due the contractor under this contract, and the fund in the hands of the owner against which claims are filed. That is to say, after the satisfaction of the claims, the balance is all that would be due the contractor.

It may be that the allegations of the answers and cross-petitions of the sub-contractors are not sufficient, in that they do not set up when subsequent payments fell due. I do not think that they contain such allegation. Therefore, for this purpose, the answers and cross-petitions might be demurrable, and leave will be given to such defendants to amend their pleadings to conform with the case of Watkins, Pease & Co. v. Shaw, above cited.

It would seem, therefore, that all the parties interested in the fund being in court in this case, the only exception being as between the head contractor and the owner, if by order of the court the sub-contractors should receive their money from the owner, the owner could use such payment, by order of the court, as a credit on the amount of said contract; and, upon the payment and release of so much of said money, if there was any balance in the hands of said owner then due the head contractor, the head contractor might bring a new action, and maintain a suit againts said owner for such balance.

I feel, therefore, that the sub-contractors should be allowed to prosecute their claims, and leave will be given to them as well as to the owners to further amend or file any pleadings that may be necessary between the owner and said sub-contractors to bring the case to issue.

Charles J. Hunt, Schwab & Schultz and F. H. Oehlmann for contractor and sub-contractors.

D. S. Oliver for the owner.